MELL OLSTON ET AL., APPELLANTS, V. WOODS BROTHERS CORPORATION ET AL., APPELLEES.

FILED JUNE 29, 1934. No. 29001.

*Boehmer & Boehmer*, for appellants.

*Woods, Woods & Aitken*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LIVINGSTON, District Judge.

GOSS, C. J.

Appellants, claiming through Callen (sometimes called Calvin) Thompson, now deceased, sued for a decree for

specific performance of a contract made by Callen Thompson and Woods Brothers Corporation (hereinafter called Woods Brothers), or in lieu thereof that the corporation be required to pay appellants $25,491.18, with interest from October 1, 1932, as damages. From an adverse decree they appeal.

Callen Thompson, being the owner of 40 acres of farm land in the village of College View, and desirous of selling it, on March 24, 1926, entered into a written contract with Woods Brothers. This land is bounded on the north by Van Dorn street, on the south by Summit street, on the west by Fortieth street and extends east from Fortieth street approximately one-fourth of a mile. They agreed to plat, subdivide and grade the tract and to furnish abstracts to purchasers, all without cost to Thompson. They agreed "to pay all taxes during the life of the contract," to commence sales within 60 days, to render a statement of sales and payments every 90 days, after the first year to pay Thompson 6 per cent. interest payable monthly on any unpaid balance due him under the contract, and during the first year to pay him like interest on all sales, but not on more than the balance then due him; they agreed to pay him, "when and as received, all payments made or received on the sale of said property," less 10 per cent. commission to salesmen, until Thompson shall have received $30,000.

In consideration of the foregoing, Thompson agreed to "deliver good and sufficient title and to sign deeds and to procure necessary signatures to effect the sale of any part or parcel of the property" and upon receipt of $30,000 to convey to Woods Brothers by warranty deed any of the property then unsold. The contract provided that Woods Brothers should have no money, except the sales commission, until Thompson had been paid the amount due him as above. The contract fixed no definite period of time for its duration.

Woods Brothers promptly platted, subdivided and graded the land into eight blocks, with appropriate streets.

The allotment is called Woods Brothers-Thompson's Summit. They proceeded to sell the lots to the public on contracts with small down payments. In the spring of 1926 the city council of College View, acting under authority of statute, without petition, authorized the paving of the streets in the allotment. They were paved and the cost was assessed against the lots. In due course approximately $30,000 worth of the lots had been sold. If they had been paid for in full by the purchasers and if the purchasers had paid their instalments of special taxes, Thompson, or those here claiming under him, would have received the full $30,000 contemplated in the contract as going to him, and Woods Brothers would have been entitled to the balance of the lots for their participation in the venture, as intended by the contract. But the purchasers of lots did not carry out their contracts, the market for suburban lots failed to furnish new purchasers of other lots, the general and special taxes inexorably accumulated so that their liens exceeded the market value of the land and the speculation ended disastrously to both contracting parties.

There is no serious claim that Woods Brothers did not account in accordance with the terms of their contract for all money received from the sales. It would not aid the decision to go into the accounts relating thereto. We think it clear from the evidence that Thompson and plaintiffs received all that was due them under the contract considered as a contract of agency authorizing Woods Brothers to sell lots until the sales thereof produced enough to pay the owner of the land the amount stipulated. As we have stated, the actual income produced was not sufficient to reach that point.

It is shown by the petition that Callen Thompson died March 5, 1928, having devised the residue of his estate, in which was included this land, to his heirs at law. The interests went to about 20 different persons, related to Thompson as sister, nephews and nieces (some of them one degree removed by reason of the deaths of their

parents), heirs and devisees of deceased persons entitled to take under the will of Thompson. These various interests ranged all the way from a one-seventh to a one hundred and seventy-fifth interest in the land and to prepare for proof that the estate vested in these parties required the probating of several estates. This made it difficult for the heirs of Thompson to give title to lots sold when they were paid for and deeds would be demanded by the purchasers.

On or about November 8, 1930, Woods Brothers applied to the agents and attorney of the heirs at law of Thompson for a deed to one of the lots which had been sold to Agnes Slot and which had been fully paid for. There is evidence that, after considerable delay, these agents advised Woods Brothers that they were unable to obtain the deed and Woods Brothers made settlement with Agnes Slot for the sums paid by her in the purchase of the lot.

The district court held that the heirs of Callen Thompson breached the agreement between Callen Thompson and Woods Brothers by reason of their failure to deliver the deed to Woods Brothers for the lot sold to Agnes Slot; that the agreement created no obligation on the part of Woods Brothers to purchase the land but constituted Woods Brothers Corporation sales agent for the sale of lots to the public; and entered judgment against those claiming under Callen Thompson.

The agreement clearly did not establish an obligation on the part of Woods Brothers to purchase the land. Specific performance of an obligation not created by the agreement relied upon will not be decreed. *Mercer v. Payne & Sons Co.*, 115 Neb. 420.

No definite duration of the continuation of the sales agency was stated in the agreement. It persisted for several years until changed conditions of the market for suburban lots made it impracticable of performance, laying out of view here its breach by plaintiffs. An agreement with no definite time for performance remains in effect only a reasonable time. *Mercer v. Payne & Sons Co.*, 115 Neb. 420; 1 Williston, Contracts, sec. 38.

The failure of the heirs to make a deed to the lot purchased by Agnes Slot constituted a breach of the contract and indicated an inability to carry it out in a way vital to the disposal of lots on the market. A real estate sales agent may terminate an agreement to sell lots where his principal fails or is unable to convey to a purchaser one of the lots sold and where all the lots are held by the same title.

We are of the opinion the judgment of the district court was right. It is

AFFIRMED.